(April 30, 1998)

■ TRADEX BROKERAGE SERVICE, INC., et al., Respondents, v MARILYN P. MILLER, Appellant. [672 NYS2d 295] —Order, Supreme Court, New York County (Barbara Kapnick, J.), entered June 2, 1997, which granted the petition to permanently stay the arbitration commenced by respondent against petitioners before the New York Stock Exchange, unanimously reversed, on the law, with costs, the petition denied and the proceeding dismissed.

Petitioner Tradex is a small, closely held broker-dealer in securities and a member of the New York Stock Exchange. Petitioner Herbert Frumkes is a director and president of Tradex and, according to the petition, owner of 34.58% of Tradex's common stock. Respondent is the widow of Marvin S. Miller, Tradex's former treasurer, who, with Mr. Frumkes, founded Tradex in 1979 and owned an equal amount of shares, the balance being divided among minority investors.

The 1979 Amended Shareholders Agreement, signed by Messrs. Miller and Frumkes and the minority shareholders, related to the sale or disposition of Tradex shares and the terms and conditions of the operation of the Company. The agreement provided that the death of a shareholder would constitute an automatic offer of sale of his or her shares to the company, which would be bound to accept such offer, the price being book value.

In 1988, after Tradex had discontinued its pension plan,

Messrs. Frumkes and Miller entered into an agreement providing that if either died, his widow or heirs would be entitled to receive $50,000 per year for five years and they would not be forced to sell their Tradex stock; rather, those shares would be placed in trust with the surviving principal as trustee and the widow or heirs as beneficiary. The beneficiary was to be "passive", with no right to be active in Tradex's management. That agreement was restated in essentially identical terms on March 18, 1993.

This proceeding arises from Mrs. Miller's letter to the New York Stock Exchange, dated September 13, 1996, seeking, as beneficial owner of her husband's shares, arbitration of her claim that petitioners have breached the 1988 and 1993 agreements by refusing to recognize her as the beneficiary of the trust for which Mr. Frumkes is the trustee and failing to continue paying her the $50,000 per annum due under the agreement.

Although there is no arbitration clause in the 1979 shareholder agreement or the later amendments, no separate contractual arbitration agreement is required before a nonmember may invoke New York Stock Exchange rule 600 (a), which, in accord with article XI, section 1 of the Exchange's constitution, mandates arbitration of "[a]ny dispute * * * between a * * * non-member and a member * * * or associated person arising in connection with the business of such member * * * upon the demand of the * * * non-member."

While rule 600 (a) does not govern " 'every dispute [a member] has with any entity in the world, no matter what the subject matter' ", the " 'reasonable expectations' " of an Exchange member who agrees to be bound by rule 600 (a) are the touchstone of analysis (*Matter of Nomura Sec. Intl. v Citibank*, 81 NY2d 614, 619, quoting *Paine, Webber, Jackson & Curtis v Chase Manhattan Bank*, 728 F2d 577, 580-581).

Thus, a member would reasonably expect that a nonmember's challenge to the member's business practices would be subject to arbitration and " 'the Exchange's interest in the business conduct of its members' itself warrants imposition of NYSE's arbitration requirements in such disputes" (*Matter of Nomura Sec. Intl. v Citibank, supra*, at 620, quoting *Haviland v Goldman, Sachs & Co.*, 947 F2d 601, 607, *cert denied sub nom. Aaron & Co. v Haviland,* 504 US 930).

Where, as here, the dispute arises from agreements between the two controlling shareholders of Tradex concerning the disposition of their shares upon their death, it is clearly arbitrable under the broad arbitration clause governing Exchange

members, as "arising out of the business of" the shareholders, and the disposition of the shares in question will necessarily affect the management and control of Tradex (*cf.*, *Matter of Dunay v Weisglass*, 54 NY2d 25). Concur—Milonas, J. P., Ellerin, Mazzarelli and Andrias, JJ.